IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALICE ACHEE-SHARP, | |
|     Plaintiff, | Case No. 2:19-cv-02100-KHV |
| v. | |
| LENEXA REAL ESTATE PORTFOLIO PARTNERS, LLC, | |
|     Defendant/Third-Party Plaintiff, | |
| v. | |
| SNOWMEN 365, LLC, | |
|     Third-Party Defendant/Fourth. | |

**LENEXA REAL ESTATE PORTFOLIO PARTNERS, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant/Third-Party Plaintiff Lenexa Real Estate Portfolio Partners, LLC ("Lenexa Real Estate"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1, 7.6 and 56.1, hereby submit the following Memorandum in Support of its Motion for Summary Judgment.

**Table of Contents**

                                                                                                                    Page

I.    Nature of Case ................................................................................................... 1

II.   Statement of Uncontroverted Material Facts .................................................. 1

      A.    The Parties ............................................................................................. 1

      B.    The Twelve-Hour Ice Storm Prior to Plaintiff's Fall ............................ 2

      C.    Plaintiff falls early on February 21, seven hours after removal efforts
            are completed ......................................................................................... 3

      D.    Two prior falls in the Ecoworks parking lot occurred during warm weather
            in 2017 making them both remote in time and utterly dissimilar to Plaintiff's
            fall in February after an ice storm ......................................................... 3

      E.    Maintenance in the parking lot in December 2017 – January 2018 addressed
            the issues regarding the parking lot integrity that were known to Lenexa
            Real Estate Prior to Plaintiff's fall ........................................................ 4

III.  Questions Presented .......................................................................................... 4

IV.   Standard of Review ........................................................................................... 4

V.    Argument and Authorities ................................................................................ 5

      A.    Summary judgment should be granted in Defendants' favor on Plaintiff's
            claim for negligence when she cannot establish as a matter of law that
            Lenexa Real Estate had knowledge of ice or potholes in the parking lot in the
            area where she fell prior to her alleged fall on February 21, 2018……………5

VI.   Conclusion ........................................................................................................ 13

VII.  Index of Exhibits

      Exhibit 1 Deposition of Plaintiff Alice Achee-Sharp
      Exhibit 2 Property Management Agreement
      Exhibit 3 Deposition of Daniel Eifert
      Exhibit 4 Deposition of Michael Gary Hathcock
      Exhibit 5 Building Services Contract
      Exhibit 6 Maps of Service Area at Ecoworks
      Exhibit 7 Winter Storm Report
      Exhibit 8 On-Property Activity from Timesheets

Exhibit 9 February 20, 2018 Email from Snowmen 365, LLC
Exhibit 10 February 20, 2018 Email to Snowmen 365, LLC
Exhibit 11 Deposition of Karen Grantham
Exhibit 12 Employer's Report of Accident
Exhibit 13 February 21, 2018 Email to Martin Whipple
Exhibit 14 Report of Karen Grantham Fall
Exhibit 15 September 12, 2017 Email to Martin Whipple
Exhibit 16 Paving Invoice

**Certificate of Service** ...................................................................................................**14**

# Table of Authorities

Page

**Cases**

*Brock v. Richmond-Berea Cemetery Dist.,* 264 Kan. 613, 620 (1998) ......................................6, 9

*Folks v. Kansas Power and Light Co.,* 243 Kan. 57, 66 (1988) .....................................................7

*Gardin v. Emporia Hotels, Inc.,* 31 Kan. App. 2d 168, 171 (Kan. Ct. App. 2003) ......................11

*Jones v. Hansen,* 254 Kan. 499, 509 (1994)................................................................................5, 6

*Little v. Butner,* 186 Kan. 75, 81 (1960) ........................................................................................9

*Mincin v. Vail Holdings, Inc.,* 208 F.3d 1105, 1108 (10th Cir. 2002).............................................5

*Powers v. Kansas Power & Light Co.,* 234 Kan. 89, 89 (1983).....................................................7

*Sawyers v. Norton,* 962 F.3d 1270, 1282 (10th Cir. 2020) .............................................................4

*Simons v. Eaton Corp.,* No. 93-114-PFK, 1994 WL 721494 (D. Kan. Dec. 6, 1994)............ 11, 12

*Smith v. Kansas Gas Service Co.,* 285 Kan. 33, 39 (2007) ............................................................5

**Statutes – Federal**

28 U.S.C. § 1332.............................................................................................................................5

**Rules**

Fed. R. Civ. P. 56(a).......................................................................................................................4

**I.   Nature of the Case.**

Plaintiff, Alice Achee-Sharp ("Plaintiff"), filed an Amended Complaint against Lenexa Real Estate asserting a claim for negligence related to an alleged fall that occurred in the parking lot of 16105 W. 113th Street, Lenexa, Kansas ("Ecoworks") on February 21, 2018.  Plaintiff alleges that the fall occurred due to icy conditions in the parking lot.

**II.   Statement of Uncontroverted Material Facts.**

   **A.   The Parties.**

   1.   At all times material hereto, Plaintiff Alice Achee-Sharp ("Plaintiff") was an employee of Grantham University, which was a tenant of the building located at 16025 – 16105 W. 113th Street, Lenexa, Kansas, referred to as Ecoworks I & II (hereinafter, "Ecoworks").  (ECF Doc. Nos. 1, 71; Ex. 1, Plaintiff, 10:25 – 11:1-20).

   2.   Defendant Lenexa Real Estate Portfolio Partners, LLC, ("Lenexa Real Estate") at all times material hereto owned Ecoworks including the buildings and parking lots. (ECF Doc. No. 46)

   3.   On December 20, 2013, Hines Interests Limited Partnership and Lenexa Real Estate Portfolio Partners entered into a property management agreement whereby Hines Interests Limited Partnership agreed to provide day-to-day management and operation of Lenexa Real Estate Portfolio Partners' properties, including the property known as Ecoworks I & II located at 16025-16105 W 113th Street, Lenexa, Kansas ("Ecoworks"). (Ex. 2, LREPP 001134 – 001206, I&A[1] in Ex. 3, Eifert, 106: 4 - 11)

   4.   At all times material hereto, Martin Whipple was the property manager at Ecoworks. (ECF Doc. No. 215, ¶ 2.a.3.4; Ex. 3, Eifert, 15:21-24)

   5.   On January 1, 2018, Lenexa Real Estate Portfolio Partners, LLC, and Snowmen 365, entered into a Building Services Contract ("the Contract") for the performance of snow and ice removal services at Lenexa Real Estate's properties, including Ecoworks.  Snowmen 365 was contracted to provide services in all of the drives, parking lots, and walks at Ecoworks.  The Contract was in full force and effect on February 21, 2018. (Ex. 5, LREPP 001097 – 001122, I&A in Ex. 4, Hathcock, 20:12-24; Ex.6,

---

[1] "Identified and Authenticated"

Snowmen 365_000083 – 000084, I&A in Ex.4, Hathcock, 27: 21 – 25, 28: 1 – 7; Ex. 1, Hathcock, 20: 22-24).

B.   **The twelve-hour ice storm prior to Plaintiff's fall.**

6.   On February 19, 2018, from 8:00 a.m. to 12:30 p.m., a cold front moved into the Kansas City area dropping temperatures from sixty degrees to thirty degrees with a band of light showers. From 12:30 p.m. to 10:40 p.m. on February 19, 2018, there were periods of drizzle and scattered rain showers with temperatures dropping to thirty to thirty-two degrees. The pavement temperatures remained above freezing so that surfaces were wet, but not frozen. (Ex. 7, Snowmen 365_000002).

7.   On February 20, 2018, from 2:20 a.m. to 6:20 a.m., scattered small to light freezing rain crossed Kansas City, with temperatures remaining at thirty to thirty-two degrees. (Ex.7 , Snowmen 365_000002).

8.   In response to these conditions, on February 20, 2018, at 5:50 a.m., Ed Wagner, a representative of Snowmen 365, salted the parking lot at Ecoworks. (Ex. 8, Snowmen 365_000081).

9.   From 6:20 a.m. to 10:15 a.m., moderate to heavy freezing rain and sleet crossed all of Kansas City, temperatures were at twenty-eight to thirty-two degrees with surfaces ranging from slushy to icy depending upon the amount of sleet at the location. (Ex.7, Snowmen 365_000002).

10.  On February 20, 2018, at 7:04 a.m., Snowmen 365 advised Martin Whipple that due to winter weather in the area, it had already begun performing salting and deicing services at properties, and it would continue to monitor conditions and respond accordingly. It further advised that if areas were icy at a property, the account manager should be notified and Snowmen 365 would send a crew to respond. (Ex. 9, Snowmen 365_0002000 – 000204).

11.  On February 20, 2018, at 8:26 a.m. Wendy Enslow, Tenant Coordinator at Ecoworks, emailed Snowmen 365 to advise that there were reports that the parking lot was becoming slick. (Ex. 10).

12.  On February 20, 2018, at 8:40 a.m. Ed Wagner salted the parking lot at Ecoworks. (Ex. 8, Snowmen 365_000081).

13.  From 10:15 a.m. to 3:00 p.m. on February 20, 2018, the freezing rain and sleet continued and then ended from west to east across the city. After the end of the precipitation, temperatures dropped to twenty-two to twenty-

2

        four degrees, and all moisture/sleet instantly froze and bonded to paved surfaces.  (Ex. 8, Snowmen 365_000081).

14. On February 20, 2018, at 3:30 p.m., Ed Wagner salted the parking lot at Ecoworks.  (Ex 7, Snowmen 365_000002).

15. Beginning at 10:30 p.m. and continuing until 1:00 a.m. on February 21, a representative of Snowmen 365, Terry Vick, pushed snow and ice to designated areas of the parking lot.  During this time Ed Wagner, also plowed the lot.  At 12:20 a.m. on February 21, Ed Wagner salted the parking lot.  (Ex 7, Snowmen 365_000002).

### C. Plaintiff falls early on February 21, seven hours after removal efforts are completed.

16. On February 21, 2018, Plaintiff arrived in the parking lot at Ecoworks between 8:08 and 8:09 a.m. where she observed slushy, dirty "muck" that she assumed was water (Ex. 1, Plaintiff, 15:15 – 20, 22: 20 - 24).

17. While walking through the area she thought was water, her feet hit ice and she fell landing on her hands and knees, with her left knee landing in a pothole.  (Ex. 1, Plaintiff, 23: 3 -10, 24: 19-20, 119: 1 – 11).

18. Plaintiff reported her fall to Karen Grantham, Senior Human Resources Manager at Grantham University at 8:35 a.m. (Ex 11, Grantham, 16: 22 – 25,116: 3 – 5;  Ex. 12, EROA_000001).

19. At 11:31 a.m., Karen Grantham notified Martin Whipple of Plaintiff's slip and fall on ice in the parking lot.  (Ex. 13)

### D. Two prior falls in the Ecoworks parking lot occurred during warm weather in 2017 making them both remote in time and utterly dissimilar to Plaintiff's fall in February after an ice storm.

20. On July 27, 2017, Karen Grantham reported she slipped and fell in a wet area of the following rain storm earlier that day when she tried to avoid a large puddle.  (Ex.14, LREPP 001267 – 001274; Ex. 11, Grantham 67: 20 – 25, 68: 1 -5).

21. On September 12, 2017, Karen Grantham reported that an employee Tabitha Davis slipped and fell in the parking lot.  The weather conditions surrounding Davis' fall are unknown.  (Ex. 15; Ex. 11,Grantham, 118: 21 – 24).

E.  **Maintenance in the parking lot in December 2017 – January 2018 addressed the issues regarding the parking lot integrity that were known to Lenexa Real Estate prior to Plaintiff's fall.**

22. On December 8, 2017, Hammons Asphalt Paving, Inc. replaced approximately six-hundred five feet of curbing in the Ecoworks parking lot. (Ex. 16, LREPP 001275).

23. On December 22, 2017, Hammons Asphalt Paving, Inc. skim patched throughout the Ecoworks parking lot. (Ex. 16, LREPP 001275).

24. On January 4, 2018, Hammons Asphalt Paving, Inc. skim patched throughout the Ecoworks parking lot. (Ex. 16, LREPP 001257).

**III.  Questions Presented.**

   A.  **Should summary judgment be granted in Lenexa Real Estate's favor on Plaintiff's claim for negligence when she has not established that Lenexa Real Estate had knowledge of ice or potholes in the parking lot in the area where she fell prior to her alleged fall on February 21, 2018?**

**IV.  Standard of Review.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

4

V.      **Arguments and Authorities.**

      A.      **Summary judgment should be granted in Defendants' favor on Plaintiff's claim for negligence when she cannot establish as a matter of law that Lenexa Rea Estate had knowledge of ice or potholes in the parking lot in the area where she fell prior to her alleged fall on February 21, 2018.**

Plaintiff has invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF Doc. No. 53, ¶ 4). "A federal court sitting in diversity applies the substantive law of the forum state." *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002) citing *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001). Accordingly, Kansas substantive law governs Plaintiff's claims against Lenexa Real Estate.

Under Kansas law, to recover for negligence Plaintiff must establish that Lenexa Real Estate owed her a duty of care, that it breached its duty, that she was injured, and that there was a causal connection between the duty breached and her injury suffered. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39 (2007). Plaintiff's claims sound in premises liability, as she seeks to hold Lenexa Real Estate liable for a dangerous condition in the parking lot, namely, potholes and ice.[2]

Kansas law imposes a duty of reasonable care under all circumstances on an owner/occupier of property to invitees and licensees alike with respect to maintenance of the property. *Jones v. Hansen*, 254 Kan. 499, 509 (1994). In determining whether reasonable care has been exercised courts consider factors such as, (1) the foreseeability of the harm to the entrant; (2) the magnitude of the risk of injury to others in maintaining such a condition; (3) the

---

[2] While Plaintiff's First Amended Complaint identifies ice as the alleged dangerous condition, based upon her deposition testimony and her representations in the Pretrial Order, Plaintiff intends to argue that potholes were also a dangerous condition of the parking lot (*See* ECF Doc. Nos. 71, 214). Accordingly, this Motion will address both conditions.

5

individual and social benefit to maintaining such a condition; and (4) the burden upon the occupier or community, with respect to inconvenience or cost, in providing adequate protection against a condition. *Id.* at 509-510.

However, generally before a landowner is liable for a dangerous condition, the plaintiff must establish that the landowner had actual knowledge of the condition or that in the exercise of ordinary care the landowner should have known about it. *Brock v. Richmond-Berea Cemetery Dist.*, 264 Kan. 613, 620 (1998). Accordingly, for Lenexa to be liable to Plaintiff, she must establish that Lenexa Real Estate had actual knowledge of ice and potholes in the parking lot or that in the exercise of ordinary care it should have known of their existence prior to her fall.

### 1. The two prior falls are not sufficiently similar or closely proximate in time to Plaintiff's fall to provide notice of ice and potholes in the parking lot five months after the last fall occurred.

Plaintiff wholly relies upon two prior falls in the Ecoworks parking lot, the Karen Grantham fall and the Tabitha Davis fall to establish that there was a dangerous condition of the parking lot which caused ice and potholes on February 21, 2018, and that Lenexa Real Estate had notice of the same prior to Plaintiff's alleged fall.

On July 27, 2017, Karen Grantham reported that she slipped and fell in a wet area of the parking lot following a rainstorm when she was maneuvering around a puddle. (SOF ¶ 20). This was reported to the property manager, Martin Whipple. (SOF ¶ 20, 4). In his investigation notes, Whipple acknowledged that while there was water on the surface from the rain, he did not feel the pavement was slick in the area she pointed out. (Ex. 14, LREPP 001271).

6

On September 12, 2017, Karen Grantham reported another slip and fall in the parking lot to Martin Whipple. (SOF ¶ 21). The only report of Ms. Davis' fall is the email from Karen Grantham to Martin Whipple, and the only information within the report is that there was a slip and fall in the parking lot. (Ex. 15). Grantham's email contains no reference to any weather condition or other condition in the parking lot that allegedly caused or contributed to cause to the Davis fall (Ex. 15). Moreover, it is unclear from the email where the fall occurred within the parking lot. (Ex. 15).

Evidence of prior similar accidents are admissible to establish foreseeability where the prior accidents involve substantially the same circumstances to the case at bar. *Powers v. Kansas Power & Light Co.*, 234 Kan. 89, 89 (1983). Exact similarity of the prior accident and the accident at issue is not required, as long as the prior accident would have warned the defendant. *Folks v. Kanas Power and Light Co.*, 243 Kan. 57, 66 (1988) (overruled on other grounds by *York v. InTrust Bank, N.A.*, 265 Kan. 271 (1998)).

Karen Grantham categorized both her fall and Tabitha Davis fall as slips and falls, and each occurred in the parking lot of Ecoworks, that is where the similarity between these falls and Plaintiff's fall begins and ends. For these falls to rise to the level of providing notice of a dangerous condition in the parking lot, there must be more. Plaintiff fell in February, the morning after a twelve-hour ice storm and the subsequent removal efforts when temperatures were between ten to fifteen degrees. (SOF ¶¶ 6-9, 12-16). By contrast, Karen Grantham fell some seven months earlier after a rainstorm. (SOF ¶ 20). There is no evidence of the weather conditions surrounding the Davis fall. (SOF ¶ 21). The use of prior similar incidents is to establish foreseeability of harm based upon the substantially similar circumstances of prior

7

incidents. Here, Plaintiff attempts to draw a through line from the Grantham incident to Plaintiff's fall without consideration or argument of how a slip and fall after a rainstorm was sufficient to warn Lenexa Real Estate that seven months later there would be a slip and fall on ice after an ice storm. The uncontroverted material facts with respect to the Grantham fall and the Davis fall do not establish notice of any condition in the parking lot to Lenexa Real Estate, let alone a dangerous one.

The paramount consideration with respect to prior accidents is the warning the defendant received from the prior accident in relation to the causal factors of the subsequent accident. Indeed, if the Court adopts Plaintiff's logic regarding the Grantham, Davis, and Sharp falls, it would abandon long-standing Kansas precedent regarding the duties of landowners. The practical effect of such a decision would be that any fall at a property would place the landowner on notice of any subsequent fall regardless of the weather conditions, the temporal relationship, and the alleged causal factors. Thereby rendering a landowner an insurer against all accidents that may befall a person at its property in contravention of clearly established Kansas law.

> **2. The parking lot was structurally maintained throughout Lenexa Real Estate's ownership, with skim patching occurring a little over a month prior to Plaintiff's fall.**

Plaintiff in her deposition testified that after she slipped on ice, she landed on her hands and knees, with her left knee in a pothole. (SOF ¶ 17). It is unclear from her testimony that the alleged pothole played any causal role in her slip and fall. Initially in her deposition, Plaintiff referred to the area of the parking lot where she slipped and fell as "the area where the potholes were". (Ex. 1, Plaintiff, 22:20-21). However, upon further questioning with the use of historical Google Earth Images of a section of the parking lot she had produced in discovery, Plaintiff

8

testified that she recalled pavement repairs occurring in the same area in 2016 or 2017. (Ex. 1, Plaintiff, 83:21 -25, 84: 1 -7). In fact, this testimony confirms a paving invoice produced by Lenexa Real Estate, identifying dates of paving maintenance was performed at the Ecoworks parking lot. (*See* Ex. 16).

On December 8, 2017, Hammons Asphalt Paving Inc. replaced six-hundred five feet of curbing in the Ecoworks parking lot. (SOF ¶ 22). Thereafter, on December 22, 2017, and January 4, 2018, Hammons Asphalt Paving, Inc. skim patched throughout the Ecoworks parking lot. (SOF ¶¶ 23-24). There is no evidence of complaints to Lenexa Real Estate or the management entity, Hines Interests LP, from January 4, 2018, up to the time of Plaintiff's fall on February 21, 2018, regarding potholes in the parking lot. Stated another way, there is no evidence to support a finding that after the pavement skim patching in January 2018, that Lenexa Real Estate had actual knowledge of potholes in the area of the parking lot where Plaintiff alleges she fell. Moreover, Plaintiff cannot establish how long the potholes were allegedly in that area of the parking lot after the skim patching on January 4, 2018, prior to her fall. Absent some indicia that potholes existed in the area for such a length of time that in the exercise of reasonable care Lenexa Real Estate knew, or should have known, of their existence, Plaintiff cannot establish that Lenexa Real Estate had constructive notice of the potholes prior to her fall on February 21. *See supra Brock v. Richmond-Brea Cemetery District*, 264 Kan. 613, 620 (1998); *See also Little v. Butner*, 186 Kan. 75, 81 (1960) (for a landowner to be liable for a condition that it did not create, plaintiff must establish either actual knowledge of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the landowner should have known of the same).

### 3. Lenexa Real Estate had no notice of any remaining condition of ice after the cessation of removal efforts at 1:00 a.m. on February 21 prior to Plaintiff's fall seven hours later.

In the evening of February 19, 2018, a drizzle and scattered rain showers were occurring across the Kansas City Metropolitan area. (SOF ¶ 6). Because the pavement temperatures remained above freezing surfaces were wet, but not frozen. (SOF ¶ 6). From 2:20 a.m. to 6:20 a.m. on February 20, freezing rain began in the Kansas City area, and in response to these conditions, at 5:50 a.m., a representative of Snowmen 365, Ed Wagner, salted the parking lot at Ecoworks. (SOF ¶¶ 7-8). At 7:04 a.m., Snowmen 365 advised Martin Whipple of the winter weather predicted throughout the day, that it would monitor conditions and respond accordingly. (SOF ¶ 10). Snowmen 365 advised that if areas were becoming icy, that the property should notify its account manager, and Snowmen 365 would send a crew to respond. (SOF ¶ 10). At 8:26 a.m., Wendy Enslow, tenant coordinator at Ecoworks, advised Snowmen 365 that the management was receiving reports the parking lot was icy at Ecoworks. (SOF ¶ 11). Thereafter, at 8:40 a.m., Ed Wagner again salted the parking lot at Ecoworks. (SOF ¶ 12). The storm continued through the remainder of the day ending around 3:00 p.m. (SOF ¶ 13).

At the end of the storm, the temperatures dropped to between twenty-two to twenty-four degrees and all moisture/sleet instantly froze and bonded to paved surfaces. (SOF ¶ 13). At 3:30 p.m., Ed Wagner salted the parking lot at Ecoworks. (SOF ¶ 14). Thereafter, beginning at 10:30 p.m. and continuing until 1:00 a.m. on February 21, another representative for Snowmen 365, Terry Vick, pushed snow and ice to designated areas of the parking lot. During this time, Ed Wagner also plowed the parking lot. At 12:20 a.m. on February 21, a final application of salt was applied to the parking lot in response to the storm. (SOF ¶ 15).

While Plaintiff testified that when she arrived in the parking lot on February 21, after the removal efforts responsive to the February 20 storm had been completed, she observed slushy, dirty "muck" that she assumed was water, but realized it was ice *after* she fell. (SOF ¶¶ 16-17). Plaintiff by her own admission did not appreciate or realize that there was ice remaining in the parking lot, yet, she charges Lenexa Real Estate with having superior knowledge on the sole basis that it owned the property. Kansas law requires more, and Plaintiff simply cannot establish it. Indeed, the uncontroverted material facts establish that it is only *after* Plaintiff has fallen that Martin Whipple received notice that there was ice in the parking lot on February 21, 2018. (SOF ¶ 19). Moreover, from correspondence the prior day, it is evident that when the management received notice that the parking lot was becoming icy; it in turn notified its snow and ice removal contractor to remediate the condition. (SOF ¶ 11). It stands to reason that had the management had such notice prior to Plaintiff's fall, it would have acted accordingly.

### 4. The uncontroverted material facts establish that Lenexa Real Estate had no notice of ice or potholes in the parking lot prior to Plaintiff's fall shortly after 8:00 a.m. on February 21, 2018.

Generally, in negligence cases summary judgment is granted with caution, except where the plaintiff cannot meet the basic requirements of their negligence claim. *Gardin v. Emporia Hotels, Inc.*, 31 Kan.App.2d 168, 171 (Kan. Ct. App. 2003). This is the precise case at bar and why summary judgment is appropriate on Plaintiff's claim. The uncontroverted material facts and reasonable inferences to be drawn therefrom, considered in the light most favorable Plaintiff, do not establish her right to relief. Plaintiff has not established as a matter of law that Lenexa Real Estate had actual or constructive notice of naturally occurring conditions of ice and/or potholes in the parking lot at Ecoworks prior to her fall shortly after 8:00 a.m. on February 21, 2018.

This Court previously has been called upon to consider summary judgment in favor of a landowner under strikingly similar circumstances. In *Simons v. Eaton Corp*, the court granted summary judgment in a landowner's favor when the plaintiff, Simons, could not establish that the defendant had knowledge of ice in the parking lot where he fell. *Simons v. Eaton Corp*., No. 93-1144-PFK, 1994 WL 721494 (D. Kan. Dec. 6, 1994). The weather in the four days leading up Simons' fall were cold with light drizzle occurring on November 5, the morning before his fall. *Id.* at *1. Similarly, here there was an ice storm the day before Plaintiff's fall. (SOF ¶ 6-7, 9, 13). In the early hours of November 6, prior to Simon's fall, the driveways, parking lot, and stairwells of Eaton's property were cleared. *Simons* at *1. Here, Snowmen 365 actually performed some removal services, namely salting, in response to slick conditions during the ice storm; removal efforts were also undertaken at the conclusion of the storm in the afternoon of February 20, with the same being completed in the early morning hours of February 21 prior to Plaintiff's fall. (SOF ¶¶ 8, 12, 14-15). In *Simons*, the security guard, Robert French, who was admitted to be an agent of Eaton for purposes of summary judgment testified that the ice patch Simons fell on was observable from his guardhouse, but that he did not see it until after Simons fell. *Simons* at * 2. Similarly, here there is no evidence that any employee or agent of Lenexa Real Estate was aware of ice remaining in the parking lot after the completion of removal services until Karen Grantham notified Martin Whipple of Plaintiff's fall. (SOF ¶ 19). There were other falls at Eaton's premises that occurred including three others the day of Simons' fall, and nine others occurring in the two years prior to Simons' fall. *Simons* at *3. Upon consideration of the facts and circumstances of the other falls, the Court held they were not sufficiently similar to Simons' to establish Eaton's constructive knowledge of the ice patch, owing to the differences in the locations where they occurred and the absence of information

12

regarding the weather conditions at the time of the other falls. *Id* at *3-4. Like the prior alleged falls in *Simons*, the Grantham and Davis falls are not substantially similar to Plaintiff's to provide constructive notice of the conditions of ice and potholes between 1:00 a.m. and 8:00 a.m. on February 21. (SOF ¶ 20-21).

Lenexa Real Estate's liability in this case rests upon its superior knowledge of the alleged dangerous conditions and its failure to warn Plaintiff regarding the same. It is axiomatic that a landowner must have knowledge of a dangerous condition in order to be liable for the same. Stated another way, where there is no knowledge of a condition there can be no failure to warn about the condition. A landowner is not an insurer against all injuries that may befall persons at their property. Because Plaintiff cannot meet her burden to establish actual or constructive notice of her alleged dangerous conditions, the Court should grant Lenexa Real Estate's Motion for Summary Judgment on Plaintiff's claim.

## VI.  Conclusion.

For the reasons set forth above, Defendant Lenexa Real Estate Portfolio Partners, LLC, respectfully request that this Court grant summary judgment in its favor and against Plaintiff Alice Achee-Sharp, and for such other and further relief as the Court deems to be reasonable, appropriate, and just.

Respectfully submitted,

**Case Linden P.C.**

s/Jacqueline Duvall
Cory R. Buck, KS 25969
Jacqueline Duvall, USDC KS 78799
2600 Grand Boulevard, Suite 300
Kansas City, MO 64108
Tel: (816) 979-1500
Fax: (816) 979-1501
cory.buck@caselinden.com
jacqueline.duvall@caselinden.com
Attorneys for Defendant/Third-Party Plaintiff
Lenexa Real Estate Portfolio Partners, LLC

**Certificate of Service**

I hereby certify that on September 30, 2020, a true and correct copy of the above and foregoing was served by electronic filing with the Clerk of the Court in the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Melinda G. Young
Bretz & Young, L.L.C.
3 Compound Drive
P.O. Box 1782
Hutchinson, KS 67504-1782
Attorney for Plaintiff

Bradley C. Nielsen
Suzanne R. Bruss
Franke Schultz & Mullen, P.C.
8900 Ward Parkway
Kansas City, MO 64114
Attorneys for Third-Party Defendant Snowmen 365, LLC

s/Jacqueline Duvall
Jacqueline Duvall